IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


**LORI ANN HARRIS**                                                            **PLAINTIFF**

**V.**                              **CASE NO. 4:14CV00416-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                         **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

Plaintiff Lori Ann Harris appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her request for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    Background**

On June 29, 2010, Ms. Harris protectively filed for benefits due to lupus erythematosus, back problems, arthritis, and acid reflux.  (Tr. 132, 538)  Ms. Harris's claims were denied initially and upon reconsideration.

After a hearing, the Administrative Law Judge ("ALJ") issued a decision on February 24, 2012, finding that Ms. Harris was not disabled under the Act.  (Tr. 9-25)  On May 30, 2012, the Appeals Council denied her request for review.  (Tr. 1-6)  Ms. Harris appealed the decision to the United States District Court for the Eastern District of Arkansas, and on June 28, 2013, the court reversed and remanded case.  (Tr. 538)  On

remand, an ALJ conducted a hearing on February 19, 2014, at which Ms. Harris, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 561-574)

The second ALJ issued a decision on March 24, 2014, finding that Ms. Harris was not disabled under the Act. (Tr. 535-558)  On September 16, 2014, the Appeals Council denied Ms. Harris's request for additional time to file an appeal because she failed to file for an extension within 30 days of receiving the ALJ's decision. Consequently, the ALJ's decision was the Commissioner's final decision. (Tr. 531-532)

Ms. Harris, who was fifty-three years old at the time of the second hearing, has an eleventh-grade education and no past relevant work experience. (Tr. 566, 572)

## II.   Decision of the Administrative Law Judge[1]

The ALJ found that Ms. Harris had not engaged in substantial gainful activity since June 29, 2010, and had the following severe impairments: degenerative disc disease of the lumbar spine, cervical pain, arthritis, systemic lupus erythematosus, fibromyalgia, gastroesophageal reflux disease, exogenous obesity, sleep apnea, and depression. (Tr. 540-541)  The ALJ also found that Ms. Harris did not have an impairment or combination

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 541)

According to the ALJ, Ms. Harris retained the residual functional capacity ("RFC") to perform light work.  She could occasionally balance, stoop, crouch, crawl, kneel, and climb ramps or stairs, but could never climb ladders, ropes, or scaffolds.  She could perform work with limited interpersonal contact, such as meeting and greeting the public, answering simple questions, accepting payments, and making change.  She could perform tasks learned through demonstration and repetition within 30 days, with few variables, requiring little judgement, and with simple, direct, and concrete supervision.  (Tr. 542)

The VE testified that jobs available with these limitations were small-parts packing-line worker and production assembler.  Accordingly, the ALJ determined that Ms. Harris could perform a number of jobs in the national economy and that she was not disabled.  (Tr. 550, 573)

### III. Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to

---

[2] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Ms. Harris's Argument for Reversal

Ms. Harris asserts that the Commissioner's decision should be reversed because: (1) reassigning her case to a different ALJ on remand violated the Hearings, Appeals, and Litigation Law Manual ("HALLEX"); (2) the ALJ erred in discounting her subjective complaints; (3) the ALJ improperly weighed the medical evidence; and (4) the ALJ failed to fully develop the record. (Docket entry #10)

#### 1. HALLEX Compliance

Ms. Harris argues that reassigning her case to a different ALJ on remand violated HALLEX section I-2-1-55. The point is not well taken. Section I-2-1-55 grants the Hearing Office Chief Administrative Law Judge ("HOCALJ") discretion in assigning cases on remand.

The manual states that remanded cases are "<u>generally</u> assigned to the same ALJ who issued the decision or dismissal, unless the AC or court directs otherwise . . . ." HALLEX I-2-1-55(D)(2) (emphasis added). It provides that the HOCALJ can reassign cases where it is necessary to ensure that a claimant's case is heard in a timely manner or

because the initial ALJ is unavailable.  HALLEX I-2-1-55(F).  Accordingly, HALLEX I-2-1-55 was not violated merely because Ms. Harris's case was reassigned on remand.  Even if there were a HALLEX violation, there was no prejudice because the existing record contains the evidence presented in her first case.  See *Crabtree v. Colvin*, No. 1:14CV29 DDN, 2014 WL 6977779, at *9 (E.D. Mo. Dec. 9, 2014) (discussing "the legal effect of HALLEX").

### 2. Ms. Harris's Subjective Testimony

Ms. Harris next argues that the ALJ erred in discounting her complaints about the severity of her symptoms.  According to Ms. Harris, her psychosis prevents her from performing light work.  On September 28, 2010, Ms. Harris self-reported to Professional Counseling Associates ("PCA") that she was experiencing hallucinations; however, her therapist noted that her "reliability [was] questionable."  (Tr. 341)

On October 21, 2010, she returned to PCA, saying that she heard voices, but the record indicates that she "did not appear to be responding to internal stimuli," and that it was "not clear whether she [was] having psychotic symptoms."  (Tr. 337)  She was treated again on November 18, 2010, when she reported that she was "hearing stuff," but she appeared to have a logical thought process, did not appear to be responding to internal stimuli, and was not experiencing delusional or paranoid ideation.  (Tr. 333)  Despite Ms. Harris's claims of disabling psychosis, there is no objective medical evidence supporting the severity of her claims.  *Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) (the lack of

objective medical evidence is one factor that weighs against a claimant's subjective complaints).

Ms. Harris also claims that her back pain and general soreness rendered her disabled.  There is no evidence, however, that Ms. Harris received aggressive treatment for her pain; rather, she was treated conservatively with "pain medications and shots." (Tr. 134-137, 605-608, 634, 739-741)  It is well settled that "[a]n impairment which can be controlled by treatment or medication is not considered disabling." *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (conservative treatments are inconsistent with disabling pain); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

In addition, Ms. Harris failed to follow through with prescribed courses of treatment.  *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).  On June 21, 2010, she weighed 251 pounds.  Her doctor "reiterated [the] need to lose weight" and asked her to lose 10 pounds over the next three months.  (Tr. 270, 272)  Three months later, Ms. Harris weighed 250 pounds.  (Tr. 305)  Failure to follow through with doctor-recommended weight loss is an appropriate consideration in weighing the credibility of a claimant's disability claim.  *Nelson v. Sullivan*, 966 F.2d 363, 367 (8th Cir. 1992).

On November 18, 2010, Ms. Harris received treatment at PCA.  The medical records from that visit indicate that she had failed to fill a prescription from the "sleep doctors," and was not wearing her CPAP as prescribed.  (Tr. 333, 517)  On March 10, 2011, she returned to PCA and reported that she was still not wearing her CPAP.  (Tr. 466)  Failure to take medication or follow a course of remedial treatment further weighs

against the credibility of Ms. Harris's subjective complaints. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Kisling*, 105 F.3d at 1257.

Ms. Harris's daily activities also explain why the ALJ discounted her subjective complaints. She was able to drive, manage her finances, count change, shop for herself for at least two hours at a time, and attend church. (Tr. 44, 567, 789, 919) She reported that she could bathe, manage her personal hygiene, and walk to the corner to take the bus. She also testified that during a normal day, she "sit[s] around the house and watch[es] TV." (Tr. 567-568, 788, 790) Performing activities consistent with an RFC of light work, while complaining of complete disability, weighs against the credibility of a claimant's subjective complaints. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).

Based on the substantial evidence in the record as a whole, the ALJ properly discounted Ms. Harris's subjective complaints. Contrary to her assertion that he only considered the absence of objective medical evidence, the ALJ considered Ms. Harris's testimony, her daily activities, the medical evidence, and the lack of serious treatment in weighing her subjective testimony. (Tr. 543-544, 547, 548)

### 3. The Medical Evidence

Ms. Harris next asserts that the ALJ erred by failing to give controlling weight to her examining doctor's opinions. The ALJ gave "moderate, but tempered, weight" to the examining doctor's opinions because those opinions seemed to "rely heavily on the claimant's subjective allegations." (Tr. 548) For example, while Dr. Elizabeth Russell performed an antinuclear antibody and an "SSA" test, there is no documentation that she

relied on anything other than Ms. Harris's testimony to evaluate her ability to walk or stand. (Tr. 299, 300-301) Dr. John Wilson ordered an MRI, but there is no objective medical evidence to support his conclusions about Ms. Harris's physical abilities. (Tr. 352, 354-355) The ALJ properly noted that the examining doctor's opinions relied mostly on the claimant's subjective complains with little objective medical evidence to support their findings. *Vanderboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005).

Next, Ms. Harris claims that the ALJ gave significant weight to Dr. Patricia Griffin's opinion, but failed to account for her opinion that Ms. Harris had only a "marginal ability to sustain concentration." Ms. Harris fails to explain how a marginal ability to concentrate is incompatible with the RFC. In fact, the RFC accounts for her marginal concentration because she was limited to jobs that had "few variables," that required "little judgement," and that she could learn through demonstration or repetition within 30 days. (Tr. 542) Further, Dr. Linda Hartsfield specifically noted that Ms. Harris's "concentration was adequate for basic work." (Tr. 919) The ALJ properly weighed the medical evidence and made his RFC determination in light of the record as a whole. See *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

Ms. Harris maintains that Dr. Hartsfield's opinion was poorly supported; however, Dr. Hartsfield's opinion is supported by substantial evidence. Dr. Hartsfield noted that while Ms. Harris "reported the devil is talking to her through the television," her claims did "not appear consist[ent]" with the medical records. (Tr. 917, 919) Ms. Harris's friend, Rita Walker, filled out a function report and indicated that she frequently spent

time with Ms. Harris. (Tr. 744) When answering a question about Ms. Harris's "usual behavior," Ms. Walker reported that Ms. Harris had trouble sleeping and worried that someone would harm her at night; but she did not mention anything about Ms. Harris hearing the devil or having hallucinations. (Tr. 752) When Ms. Harris filled out a function report, she responded only that she worried about pain, felt claustrophobic, had panic attacks, and could not sleep at night. (Tr. 772, 792) Dr. Hartsfield found it strange that "a close friend who appeared to be in and out of [Ms. Harris's] home" made no mention of the hallucinations and had not noticed any other unusual behavior. (Tr. 918) From the medical records and her evaluation, Dr. Hartsfield concluded that it was likely that Ms. Harris was exaggerating the symptoms of her psychosis. (Tr. 919)

Finally, Ms. Harris argues that Dr. Hartsfield's opinion is inconsistent with the record because she and Dr. Griffin gave differing opinions about whether Ms. Harris exaggerated her symptoms. Dr. Griffin's opinion that "there was no evidence of symptom exaggeration" in December 2010, however, is not inconsistent with Dr. Hartsfield's observation that Ms. Harris "appeared to be exaggerating her symptoms" in May 2013. In sum, the medical records do not support Ms. Harris's description as to the severity of her symptoms. (Tr. 333, 337, 341, 349, 919)

In any event, it is the ALJ's function to resolve conflicts among the opinions of various treating and examining doctors; he may reject the conclusion of any medical expert if it is inconsistent with the record as a whole. *Pearsall*, 274 F.3d at 1219.

9

### 4. Developing the Record

Ms. Harris next asserts that, because the ALJ did not request intellectual testing, he failed to fully and fairly develop the record. There is no need to order additional medical examinations when the medical record before an ALJ provides him with sufficient evidence to make an RFC determination. See *Martise v. Astrue*, 641 F.3d 909, 926-927 (8th Cir. 2011) (explaining that the ALJ must order additional medical examinations only if the record before him does not provide sufficient evidence to determine whether a claimant is disabled). The ALJ considered the substantial evidence in the record as to Ms. Harris's intellect in making his RFC determination, and found that she was able "to perform simple repetitive work tasks." (Tr. 337, 348, 481, 545, 918) If intellectual testing was an important issue, her lawyer could have requested it at either of her hearings. Although an ALJ has a duty to develop the record, even when a claimant is represented by counsel, counsel is obliged to do more than sit by idly. See *Matthews v. Bowen*, 879 F.2d 422, 425 (8th Cir. 1989) ("The regulations, however, do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.").

## IV.    Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Ms. Harris's appeal is DENIED, the oral argument hearing scheduled

for October 1, 2015, is cancelled.  The Clerk of Court is directed to close the case.

    IT IS SO ORDERED, this 4th day of August, 2015.

                                                  _____
                                                  UNITED STATES MAGISTRATE JUDGE